No. DA 06-0210

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 168

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

KEAL GORDON REAVELY,

        Defendant and Appellant.

_____

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and for the County of Ravalli, Cause No. DC 05-27,
The Honorable James A. Haynes, Presiding Judge.


COUNSEL OF RECORD:

        For Appellant:

           David E. Stenerson, Stenerson Law Office, Hamilton, Montana

        For Respondent:

           Hon. Mike McGrath, Attorney General; Ilka Becker, Assistant Attorney
General, Helena, Montana

           George H. Corn, Ravalli County Attorney; William E. Fulbright, Deputy
County Attorney, Hamilton, Montana

_____

Submitted on Briefs:  January 4, 2007

Decided:  July 12, 2007

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1      Keal Gordon Reavely (Reavely) appeals from the Ravalli County District Court's denial of his attempt to introduce evidence of his preliminary alcohol screening test (PAST) during his trial for driving under the influence of alcohol (DUI).

¶2      We review whether the District Court abused its discretion when it decided to exclude the result from Reavely's preliminary alcohol screening test?

## FACTUAL AND PROCEDURAL HISTORY

¶3      Reavely's car struck another car while he was attempting to leave the Eagle's Club in Hamilton on the evening of November 22, 2004.  A witness to the incident notified the authorities.  The Hamilton City Police dispatched Officer Nic Painter (Officer Painter) to the scene.  Officer Painter observed that Reavely's eyes were red and that he smelled like alcohol.  Officer Painter asked Reavely for his consent to perform a PAST and Reavely agreed.  Reavely's PAST result indicated that he had a blood alcohol content (BAC) of 0.136.  Officer Painter placed Reavely under arrest for DUI and transported him to the Ravalli County detention center.  Officers performed a second breathalyzer test on Reavely at the detention center approximately 21 minutes after Officer Painter had performed the PAST procedure.  The results of the second breath test using an Intoxilyzer 5000 indicated that Reavely had a BAC of 0.187.

¶4      The State charged Reavely with felony DUI based on the fact that he had been convicted of DUI on three previous occasions.  Reavely entered a plea of not guilty, and the case proceeded to trial on July 26, 2005.  Reavely's counsel argued in his opening statement that he would present evidence that the police had administered two breath

2

tests on Reavely. The State requested a meeting with the court out of the presence of the jury to discuss Reavely's opening statement.

¶5 The State raised the concern that it suspected that Reavely intended to compare his PAST result with his Intoxilyzer 5000 result in order to show that his BAC might have been below 0.08 at the time of the accident. The State argued that the court should exclude Reavely's PAST result from evidence as PAST results had been held inadmissible in *State v. Snell*, 2004 MT 334, 324 Mont. 173, 103 P.3d 503.

¶6 Reavely's counsel admitted that *Snell* precluded the State from using the PAST result as evidence of intoxication. Reavely's counsel distinguished Reavely's facts, however, from the facts in *Snell*. He argued that Reavely did not seek to use the PAST result to prove evidence of intoxication. Reavely's counsel wanted to compare the PAST result with the Intoxilyzer 5000 result in order to establish that Reavely's BAC had been rising at the time of the accident.

¶7 The court determined that Reavely's argument assumed the accuracy of the PAST result. The court ruled that it would exclude the PAST result unless Reavely first established a foundation on which to admit the PAST result. Reavely objected for the record. Reavely made no attempt during trial to establish a foundation for admitting the PAST result. The jury found Reavely guilty of DUI and the court sentenced Reavely on October 20, 2005. This appeal followed.

## STANDARD OF REVIEW

¶8 We review a district court's evidentiary ruling for an abuse of discretion. *Snell*, ¶ 17.

3

**DISCUSSION**

¶9 *Did the District Court abuse its discretion when it decided to exclude the result from Reavely's preliminary alcohol screening test?*

¶10 Reavely argues that the court should have admitted his PAST result for the sole purpose of establishing that his BAC was rising at the time of the accident. He points out that the Intoxilyzer 5000 indicated that his BAC was 0.187 approximately 21 minutes after his PAST result had indicated that his BAC was 0.136. Reavely argues that the jury could have inferred from these results that his BAC was rising after the accident and, thus, that his BAC might have been below 0.08 at the time he was driving.

¶11 We have held that a party must establish that a defendant's PAST result is accurate and reliable before the PAST may be admitted as evidence of a defendant's BAC. *State v. Damon*, 2005 MT 218, ¶ 25, 328 Mont. 276, ¶ 25, 119 P.3d 1194, ¶ 25. The party seeking to admit the PAST must establish this foundation of accuracy and reliability with expert testimony as governed by M. R. Evid. 702. *Damon*, ¶ 25.

¶12 Reavely concedes that the State must establish a foundation of accuracy and reliability before it can admit a PAST result as evidence of a defendant's BAC. He "wholeheartedly agrees," in fact, that a PAST result represents an unreliable and inaccurate method of measuring a defendant's BAC. Reavely insists, however, that the accuracy of his PAST result is "not the core issue" because he does not seek to prove that his BAC is accurate "to a degree that it can be relied upon to establish the BAC level of a Montana citizen for purposes of proof of intoxication . . . ." Reavely points out that he wants only to "establish reasonable doubt that Reavely had a BAC greater than 0.08 at

4

the time he was driving."

¶13   The reliability and accuracy of the PAST test is critical, however, to Reavely's theory.  Reavely's BAC, in reality, may have been much less than or much greater than his PAST result indicated.  Reavely's actual BAC at the time when Officer Painter administered the PAST might have shown, for example, that his BAC was rising if it had been less than 0.187, holding steady if it had been close to 0.187, or falling if it had been greater than 0.187.

¶14   The PAST result is thus irrelevant to the fact that Reavely seeks to prove—that his BAC had been trending upward—as his admittedly "unreliable" PAST result does not tend to establish that any one of these trends was more probable than the other.  M. R. Evid. 401.  Reavely needed to provide a foundation that his PAST had been a sufficiently accurate representation of his BAC so that it was relevant to his theory.  Reavely has not done so here.

¶15   Reavely argues next that he sought to offer his PAST result only to raise a reasonable doubt that his BAC had been greater than 0.08 at the time that he had been driving.  He contends that it is unfair to require him to demonstrate the accuracy of his PAST result to establish reasonable doubt when courts permit the State to use a PAST result "without relating the actual numbers to show probable cause to arrest . . . ."  Reavely's analogy to probable cause hearings lacks merit.  The rules of evidence do not govern probable cause determinations by a judge or the police.  *See e.g.*, *Hart v. Parks*, 450 F.3d 1059, 1066 (9th Cir. 2006); *State v. Beaupre*, 2004 MT 300, ¶ 48, 323 Mont. 413, ¶ 48, 102 P.3d 504, ¶ 48 (holding that hearsay may be used to establish probable

5

cause). Moreover, by his own admission, Reavely does intend to relate the "actual numbers."

¶16 Reavely also mischaracterizes the purpose for which he sought to admit the PAST result. Reavely did not merely propose to admit the number that Officer Painter observed on the PAST screen to help establish reasonable doubt. Reavely also would have asked the jury to assume that the number Officer Painter observed actually represented Reavely's BAC within some degree of accuracy. Officer Painter had no personal knowledge, however, of Reavely's BAC. Officer Painter only knew what he saw on the PAST screen. Reavely needed to offer expert testimony in order to establish that the number that Officer Painter saw on the screen actually represented Reavely's BAC within some degree of accuracy and reliability. M. R. Evid. 602, 701, 703; *Damon*, ¶ 25. Reavely did not present any experts at trial and does not argue on appeal that he would have presented an expert at trial if he had been given the opportunity.

¶17 Reavely sought to use his PAST result to prove that his BAC was within a certain range of values, yet he made no attempt to establish a foundation at trial showing that his PAST result had been an accurate representation of his BAC within any degree of accuracy. We have never held that a court or jury may assume, as a matter of law, that a PAST result is a reliable representation of a defendant's BAC within any particular degree of accuracy. *Damon*, ¶¶ 25-29. The District Court did not abuse its discretion in excluding Reavely's PAST result under these circumstances.

¶18 Affirmed.

/S/ BRIAN MORRIS

6

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

Justice W. William Leaphart specially concurring.

¶19     I agree with Reavely's more general assertion that he should be able to use the PAST result to establish reasonable doubt.  Our holding here would have left Reavely free to do so.  He could have used his PAST result for impeachment or to call into question any number of facts that might have helped him establish reasonable doubt.  Our holding would not have prevented Reavely, for example, from asking Officer Painter to testify to the PAST result that he observed on the PAST screen.  The PAST result on the screen was within Officer Painter's personal knowledge and he was free to tell the jury what he saw, absent some evidentiary objection.  M. R. Evid. 602.  Reavely would have been free to incorporate Officer Painter's testimony into his closing argument to help establish reasonable doubt.

¶20     As the Opinion notes, however, Reavely was not merely seeking to argue to the jury that Officer Painter observed 0.136 on the PAST screen.  Rather, he sought to affirmatively argue that the number 0.136 actually represented Reavely's BAC.  This proposition requires testimony from an expert witness.

/S/ W. WILLIAM LEAPHART

7

Justice John Warner specially concurring.

¶21 I concur with the opinion of the Court. I must respectfully disagree with the concurrence of Justice Leaphart. While what was shown on the PSAT screen was within the officer's personal knowledge, and thus satisfies the requirement of M. R. Evid. 602 that a witness may testify to those things within his personal knowledge, Rule 602 is expressly made subject to the requirements of M. R. Evid. 703, concerning the basis of an expert's knowledge and opinion. Thus, in order for the officer to testify as to the actual number shown on the PSAT screen, a proper foundation would be required.

¶22 Without a proper foundation, the number is inadmissible to prove its veracity. The number has no relevance other than its veracity, as it tends to prove nothing other than blood alcohol content. M. R. Evid. 401. It follows that, unless the proper foundation is laid and the PSAT is admitted into evidence, there is no legitimate argument that can be made using the number shown on the screen.

/S/ JOHN WARNER

Justice Patricia O. Cotter dissents.

¶23 I dissent from the Court's decision to impose upon Reavely the burden of demonstrating that the State's PAST evidence was reliable. In my view, Reavely was entitled to present the PAST evidence in support of his reasonable-doubt argument without first having to present the same proof of reliability that we require when the State seeks to use PAST evidence to carry its burden of proof beyond a reasonable doubt.

8

¶24 After leaving the Eagle's Club on the evening in question, Reavely attempted to back his pickup truck out of a diagonal parking space on Pinckney Street. In the process, his truck scraped a vehicle in an adjacent parking space. Reavely remained at the scene and Officer Painter arrived several minutes later. Approximately sixty minutes after this accident, Officer Painter administered a PAST, also known as a preliminary breath test ("PBT"), which indicated that Reavely's BAC was approximately 0.136. Then, roughly twenty-one minutes later, and after he had arrested Reavely, Officer Painter administered the Intoxilyzer 5000 breath test which measured Reavely's BAC at 0.187.

¶25 At trial, the State introduced the results of the Intoxilyzer 5000 breath test as evidence that Reavely's BAC was above 0.08 when he attempted to drive away from the Eagle's Club. Reavely did not dispute that his BAC was substantially above the legal limit when the two breath tests were administered. Nor did he dispute the accuracy of either of the breath test results. Rather, he attempted to demonstrate that the jury could find a reasonable doubt as to whether his BAC had reached 0.08 at the time when he attempted to back his truck out of the parking space, over an hour before the Intoxilyzer 5000 test result was rendered.

¶26 To that end, Reavely's counsel solicited testimony from Ben Vetter ("Vetter"), an employee of the Breath Analysis Section of the Montana State Crime Lab. Vetter is a certified technician of the portable and non-portable breath analysis instruments used by Montana law enforcement agencies. Additionally, he conducts training at the Montana Law Enforcement Academy regarding, inter alia: (1) the proper operation of portable and non-portable breath analysis instruments approved for use in Montana; and

9

(2) pharmacology and toxicology, including scientific explanation regarding the process by which alcohol is absorbed into the blood and the resulting impairment of one's faculties.

¶27 Vetter testified that a person's BAC does not reach a peak immediately after alcohol consumption; rather, BAC rises over a period of time based on a number of factors unique to the individual. Vetter also acknowledged that in certain circumstances it is possible for a person to drink three or four alcoholic beverages in a short period of time and then drive a vehicle for up to five minutes without suffering from the impairing effects of the alcohol. Additionally, Reavely testified that it takes only four minutes to drive from the Eagle's Club to his home, and that he did not believe he was impaired when he entered his truck on the night in question.

¶28 Reavely's counsel argued that the State's evidence did not dispel reasonable doubt that Reavely's BAC had been below the legal limit at the time of the accident and then had gradually risen to the level detected by the Intoxilyzer 5000. In support of this argument, and in conjunction with the aforementioned evidence, Reavely's counsel sought to introduce the result of the PBT administered by Officer Painter. However, as counsel explained to the District Court, he did not seek to present the PBT result as an accurate indicator of Reavely's BAC. Rather, contrary to the assertion of Justice Leaphart in his concurrence, Reavely merely sought to present the PBT result as a broad estimate which the jury could contrast with the significantly higher result rendered approximately twenty-one minutes later by the Intoxilyzer 5000 test. Based on this comparative analysis, counsel argued, he would ask the jury to consider the possibility

10

that Reavely's post-accident BAC was rising in a manner that could indicate his BAC may have been below 0.08 when the accident actually occurred.

¶29 The State argued that PBT results are inadmissible per se under this Court's decision in *State v. Snell*, 2004 MT 334, 324 Mont. 173, 103 P.3d 503. Specifically, the State argued: "PBTs have been held to not be admissible. . . . [I]t's, per se, not admissible. And that's what the Supreme Court found in *Snell*."

¶30 In fact, we did not create any such "per se" rule in *Snell*. Rather, we simply held that the PBT result in that case was inadmissible because the State offered it for the purpose of proving the defendant's BAC, and the State failed to demonstrate that the PBT result was reliable. *Snell*, ¶¶ 37-38, 43. Yet, the District Court apparently agreed that *Snell* creates a "per se" rule of inadmissibility, concluding that admission of the PBT result would create "a test case to overturn the Supreme Court's decision in *Snell*." Thus, the District Court ruled that the PBT result was not admissible for any purpose.[1] I disagree.

¶31 We have consistently held that a PBT result is not admissible as evidence of guilt in a DUI prosecution unless it is first shown to be reliable. *State v. Weldele*, 2003 MT 117, ¶¶ 57-58, 315 Mont. 452, ¶¶ 57-58, 69 P.3d 1162, ¶¶ 57-58; *State v. Crawford*, 2003 MT 118, ¶ 20, 315 Mont. 480, ¶ 20, 68 P.3d 848, ¶ 20; *Snell*, ¶¶ 35-38 ("[T]he State has the burden of offering scientific and expert testimony to firmly establish the [PBT's]

---

[1] The District Court expressly prohibited any reference whatsoever to the PBT result, stating: "the PBT test results [are] inadmissible and they shouldn't be referred to as far as numbers or otherwise." Because this Court affirms the District Court's ruling, I disagree with the assertion in Justice Leaphart's concurrence that our decision "would not have prevented Reavely, for example, from asking Officer Painter to testify to the PAST result that he observed on the PAST screen."

reliability and accuracy."). It is entirely appropriate that this burden of proof is triggered by the State's use of PBT results because a DUI prosecution directly implicates a fundamental constitutional right of the citizen being charged—i.e., the right to due process. Due process requires that a defendant must be presumed innocent at every stage of the trial, and that the State must prove each element of the charged offense beyond a reasonable doubt in order to overcome the presumption of innocence. Section 46-16-204, MCA; *State v. Newman*, 2005 MT 348, ¶ 26, 330 Mont. 160, ¶ 26, 127 P.3d 374, ¶ 26; *State v. McCaslin*, 2004 MT 212, ¶ 24, 322 Mont. 350, ¶ 24, 96 P.3d 722, ¶ 24; *State v. Gilbert*, 125 Mont. 104, 109, 232 P.2d 338, 341 (1951) ("The presumption of innocence surrounds the defendant at every step in the trial and to its benefits he is entitled in the determination of every fact by the jury.").

¶32 The due process guarantee simply does not allow a DUI prosecution to proceed upon evidence that is not demonstrably reliable. Thus, because the defendant is presumptively innocent, and because the State bears the burden of presenting proof that dispels all reasonable doubt, the State must present affirmative proof of reliability before utilizing a PBT result as evidence of intoxication. *Weldele*, ¶¶ 57-58; *Crawford*, ¶ 20; *Snell*, ¶ 35. Without such proof of reliability, there is a risk that the trial could be fundamentally unfair—i.e., a risk that the defendant could be found guilty based on an inaccurate PBT result. *Crawford*, ¶ 18; *Weldele*, ¶¶ 55, 57 (because jurors tend to accord great weight to evidence that is scientific in nature, PBT results could be the determining factor in a finding of guilt).

¶33    This brings us to one of the most basic tenets of evidence law—the principle that admissibility of a particular piece of evidence must be determined in light of the purpose for which that evidence is offered. *See State v. Bingman*, 2002 MT 350, ¶ 34, 313 Mont. 376, ¶ 34, 61 P.3d 153, ¶ 34; *McDermott v. Carie, LLC,* 2005 MT 293, ¶ 20, 329 Mont. 295, ¶ 20, 124 P.3d 168, ¶ 20; M. R. Evid. 105.   Indeed, "[n]o issue concerning the admissibility of evidence can be resolved without answering[:] What is the purpose of the evidence being offered?"   David P. Leonard, *The New Wigmore: Selected Rules of Limited Admissibility* § 1.1 (rev. ed., Aspen Publishers 2002).   It is well established, in the Montana Rules of Evidence and our precedents, that a piece of evidence may be categorically inadmissible when offered for one purpose, and yet be admissible in the same proceeding when offered for a different purpose.    For example, evidence of other crimes committed by a defendant is not admissible for the purpose of proving character in order to show action in conformity therewith; however, that evidence is admissible for other limited purposes such as proving motive.   M. R. Evid. 404(b).   Similarly, a defendant's statements made in connection with a guilty plea that was later withdrawn are generally inadmissible as evidence against that defendant; however, they are admissible when offered for the limited purpose of impeachment.   M. R. Evid. 410.[2]

¶34    While we have consistently held that PBT results are inadmissible without affirmative proof of reliability, we have applied that rule only in cases in which the PBT evidence is offered *by the State* for the purpose of proving guilt.   However, the very

---

[2]   There are numerous other examples of evidence that is inadmissible for certain purposes but admissible for other purposes, including: evidence of subsequent remedial measures, M. R. Evid. 407; evidence of an offer to settle a claim, M. R. Evid. 408; and evidence of prior accidents in a negligence suit, *Richardson v. State*, 2006 MT 43, ¶ 26, 331 Mont. 231, ¶ 26, 130 P.3d 634, ¶ 26.

reasons for the existence of this admissibility rule demonstrate that it should not apply where the PBT evidence is offered *by the defendant* and for a different, more limited purpose. Reavely's proposed use of the PBT evidence did not implicate any constitutional protections applicable in criminal trials; it was not offered in satisfaction of any burden of proof; and it was not offered for the purpose of overcoming any constitutionally mandated presumptions. Moreover, Reavely's proposed use of the PBT result could not possibly have caused any prejudice to the State because, as we have held, when an Intoxilyzer test result indicating an illegally high BAC has been admitted at trial, the admission of a PBT result also showing an illegally high BAC is merely redundant and therefore non-prejudicial. *Weldele*, ¶ 63.

¶35 Thus, because each of the reasons for the existence of this admissibility rule is inapposite here, where the PBT result was offered for a limited purpose not contemplated by any of our precedents, the burden to prove reliability should not apply to Reavely's proposed use of the PBT evidence.

¶36 As noted above, Reavely sought to introduce the PBT result as nothing more than an estimate of his BAC roughly twenty-one minutes before the Intoxilyzer 5000 test was conducted. He expressly did not seek to establish any particular BAC level with this evidence, nor did he even seek to affirmatively "prove" that his BAC level was rising. Indeed, he was presumed innocent and therefore had no burden to "prove" anything at all.[3] Rather, he simply sought to use the PBT evidence as an estimate in support of his

---

[3] As noted in *Taylor v. Kentucky*, 436 U.S. 478, 483-84, n.12, 98 S. Ct. 1930, 1934, n.12 (1978), even when a defendant presents no evidence whatsoever, but simply "remain[s] inactive," he or she is still fully entitled to the presumption of innocence. Moreover, to the extent Reavely did choose to present evidence in this case, he was not required to meet any burden of proof to

14

reasonable-doubt argument—i.e., the argument that even though his BAC was in fact illegally high after the accident, the State's evidence did not dispel reasonable doubt that his BAC may have been below the legal limit at the time the accident occurred.

¶37 Montana's statutes, Administrative Rules, and this Court's decisions recognize that a PBT result is in fact an estimate of BAC. *See* § 61-8-409(1), MCA (the purpose of a PBT is "estimating the person's alcohol concentration"); Admin. R. M. 23.4.201(8)(b), (26) (PBT instruments "provide an estimated value of alcohol concentration"); *Weldele*, ¶¶ 6, 50. Accordingly, Reavely's counsel expressly indicated to the District Court that he would not introduce the PBT result as an indicator of any specific BAC level, but merely as an estimate or a broad range within which Reavely's BAC fell. Further, counsel expressly recognized that PBT results are not "accurate" and indicated that he would communicate that fact to the jury. In short, Reavely sought to present the PBT evidence as precisely what the law recognizes it to be—an *estimate* of his BAC.

¶38 Our precedent acknowledges that the estimate rendered by a PBT is reliable enough for certain purposes. As we have recognized, in determining whether probable cause exists to justify a warrantless arrest, law enforcement officers may rely on PBT results along with other factors such as the officer's own observations and the suspect's performance in field sobriety tests. *State v. Ditton*, 2006 MT 235, ¶ 54, 333 Mont. 483, ¶ 54, 144 P.3d 783, ¶ 54. In fact, PBT results may be a critical factor in determining whether probable cause exists for a warrantless arrest. *See State v. Feldbrugge*, 2002 MT

justify the presumption of innocence; rather, that presumption remained with him at every stage of the trial. *Gilbert*, 125 Mont. at 109, 232 P.2d at 341. Further, Reavely did not mount an affirmative defense which would have required him to affirmatively "prove" any particular facts.

154, ¶¶ 5-11, 310 Mont. 368, ¶¶ 5-11, 50 P.3d 1067, ¶¶ 5-11 (where the defendant was stopped for exceeding the speed limit and was not asked to perform any field sobriety tests, the PBT result of 0.197 was the deciding factor in the officer's determination that probable cause existed after the defendant "admitted having had a couple of drinks" and the officer observed, among other things, that the defendant smelled of alcohol, his speech was slurred, and his eyes appeared bloodshot and glassy).

¶39 Here, Officer Painter relied in part on the PBT result in determining that probable cause existed to justify a warrantless arrest of Reavely. Additionally, the State further relied on the PBT result by citing it as evidence in support of its motion for leave to file the DUI charge against Reavely. Yet, despite this reliance, and despite the fact that the State is required by law to take extensive measures to ensure PBT reliability,[4] the State nonetheless insists that the burden of demonstrating reliability—which we have traditionally imposed only where the State uses PBT evidence for the purpose of proving guilt beyond a reasonable doubt—must somehow shift to Reavely in this case. However, we have never held—before today—that a party must establish PBT reliability when the test result is offered for some purpose other than proving guilt. Moreover, as Reavely clearly indicated at trial, he would not have asked the jury to rely on the PBT result to any greater extent than the State itself had already relied on it.

---

[4] *See* § 61-8-409(7), MCA (requiring that the PBT instrument and the officer administering the test must be properly certified pursuant to Montana's Administrative Rules); *see also* Admin. R. M. 23.4.201-225 (inter alia, requiring that all PBT instruments must be tested on a monthly basis and must render results at plus or minus 10% of target value or be removed from service; providing requirements for keeping detailed records of the monthly tests; and providing training and testing requirements for the certification of officers who administer PBTs).

¶40    Given that the State is legally required to ensure PBT reliability by adhering to the stringent Administrative Rules, and given that the State relied on the PBT result to arrest Reavely without a warrant, thereby implicating his constitutional liberty interest (the right to be free from unreasonable seizure, Mont. Const. art. II, § 11), I conclude that it is fundamentally unfair to require that Reavely demonstrate the PBT's reliability when he sought to introduce the test result solely as an estimate of BAC for the limited purpose of making a comparison supporting his reasonable-doubt argument.  After all, the PBT result is the State's own evidence—the State certified Officer Painter and the PBT instrument, the State conducted the PBT through Officer Painter, and the State relied on the test result to justify a warrantless arrest of Reavely.  Thus, in my view, this evidence should not be withheld from the jury simply because Reavely did not prove its reliability in the same way the State must do so to carry its burden of proof beyond a reasonable doubt.

¶41    As this Court indicated in *State v. Damon*, 2005 MT 218, ¶ 27, 328 Mont. 276, ¶ 27, 119 P.3d 1194, ¶ 27, one of the factors establishing the reliability of a particular PBT result is the State's conformance with the administrative rule requiring proper calibration of the PBT instrument on a regular basis—i.e., monthly calibration to within a 10% margin of error.  Admin. R. M. 23.4.213(2)(b).  This Court has held that "a defendant charged with driving under the influence of alcohol is entitled to the procedural safeguards contained within the administrative rules."  *State v. Woods*, 285 Mont. 124, 127, 947 P.2d 62, 63 (1997) (internal citations omitted).[5]  In my view, if we are to

---

[5]  We have repeatedly held that defendants are entitled to the safeguards of the Administrative Rules.  *State v. McDonald*, 215 Mont. 340, 346, 697 P.2d 1328, 1331 (1985); *State v. O'Brian*,

faithfully adhere to the principle that a defendant is "entitled to the procedural safeguards contained within the administrative rules," we must not saddle the defendant with the burden of affirmatively establishing that the State conformed to those rules, particularly where the State has already relied on the PBT result to establish probable cause for a warrantless arrest.

¶42 Finally, in addition to disagreeing with the Court's decision today, I also take issue with the Court's reliance on *Damon* because our decision in that case is internally inconsistent. In *Damon*, this Court addressed the State's use of PBT evidence to prove guilt, and in doing so, repeatedly emphasized the rule that "it is better to admit relevant scientific evidence in the same manner as other expert testimony and allow its weight to be attacked by cross-examination and refutation." *Damon*, ¶¶ 17, 19, 28 (citations omitted). Based on this rule, the Court held that questions regarding whether a particular PBT result is reliable go to the weight of the evidence and *not* to its admissibility. *Damon*, ¶ 24. However, the Court then proceeded to hold that a PBT result must be shown to be reliable *before it is admissible* in evidence. *Damon*, ¶ 25. Of course, if this is so, then questions regarding the PBT's reliability do in fact go directly to the issue of admissibility, contrary to the Court's holding in ¶ 24 of *Damon*.

¶43 I dissented in *Damon*, and will not reiterate my disagreement with the outcome of that case here. However, I urge the Court to address this internal inconsistency in *Damon*, as currently, the decision can be legitimately cited for diametrically opposed rules regarding PBT evidence.

---

236 Mont. 227, 229, 770 P.2d 507, 508 (1989); *State v. West*, 252 Mont. 83, 89, 826 P.2d 940, 944 (1992).

¶44 Returning to the present case, I conclude in summary that Reavely was entitled to present the PBT evidence as an estimate of his BAC—which is in fact how it is recognized under our law—in support of his reasonable-doubt argument, without first having to present the same proof of reliability that we require when the State seeks to use PBT evidence to carry its burden of proof beyond a reasonable doubt. Here, Reavely's proposed use of the PBT evidence for a limited purpose—i.e., not to affirmatively "prove" anything, but to merely support his reasonable-doubt argument—did not implicate any of the concerns that prompted us to initially require the State to prove PBT reliability.

¶45 Moreover, given that the State is required by law to take extensive measures to ensure PBT reliability, and given that the State relied on the PBT result in this case to arrest Reavely without a warrant, Reavely should not now be required to prove that the State complied with its legal obligations to ensure PBT reliability. Indeed, we have repeatedly held that a defendant charged with DUI is entitled to the benefit of the Administrative Rules that require the State to ensure PBT reliability.

¶46 Finally, I note again what is perhaps the clearest guidance from our precedents indicating the proper outcome of this decision: the State could not have been prejudiced by Reavely's use of the PBT result because that evidence was merely redundant of the Intoxilyzer 5000 test result. *Weldele*, ¶ 63.

¶47 For these reasons, I conclude that the District Court abused its discretion in precluding Reavely from utilizing the PBT result in support of his reasonable-doubt argument. Further, I conclude that the court's decision constitutes reversible error

19

because it deprived Reavely of "a meaningful opportunity to present a complete defense." *See California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 2532 (1984). Reavely was wrongly denied the opportunity to solicit, by way of cross-examination, Officer Painter's testimony as to the PBT result. Denying a defendant the opportunity to conduct effective cross-examination amounts to "constitutional error of the first magnitude and no amount of showing of want of prejudice w[ill] cure it." *See Davis v. Alaska*, 415 U.S. 308, 318, 94 S. Ct. 1105, 1111 (1974) (citation and internal quotation marks omitted).

¶48    Accordingly, I dissent.

/S/ PATRICIA COTTER

Justice James C. Nelson joins in the dissent of Justice Patricia O. Cotter.

/S/ JAMES C. NELSON