No. 01-766

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 154

THE STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

CURTIS FELDBRUGGE,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Fourth Judicial District,
                     In and For the County of Mineral,
                     Honorable Douglas G. Harkin, Judge Presiding


COUNSEL OF RECORD:

        For Appellant:

            Daniel R. Wilson, Attorney at Law, Kalispell, Montana

        For Respondent:

            Honorable Mike McGrath, Attorney General; John Paulson,
            Assistant Attorney General, Helena, Montana

            M. Shaun Donovan, County Attorney, Superior, Montana


                      Submitted on Briefs:  March 21, 2002

                                Decided:  July 11, 2002

Filed:

             _____
                         Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1   Curtis Feldbrugge (Feldbrugge) appeals from the Fourth Judicial District Court's order affirming the Mineral County Justice Court's denial of his motion to suppress. We affirm.

¶2   We re-state the issues on appeal as follows:

¶3   (1) Were Feldbrugge's due process rights violated when the arresting officer informed him of his right to obtain an independent blood test after he administered the portable breath test?

¶4   (2) Was Feldbrugge's arrest supported by probable cause?

### FACTUAL AND PROCEDURAL BACKGROUND

¶5   The parties have stipulated to the following facts pertinent to our review. On November 16, 2000, at approximately 11:20 p.m., Feldbrugge drove westbound on Interstate 90 past two patrol cars parked in the median near Superior, Montana. Mineral County Deputy Sheriff Douglas obtained a radar speed result showing that Feldbrugge was driving 88 miles per hour in a 75 miles per hour speed limit zone.

¶6   A second officer, Highway Patrol Officer Reiner, pulled his patrol car onto the freeway to stop Feldbrugge. He saw Feldbrugge's car brake quickly and exit the freeway onto the off ramp leading to Superior. The officer then activated his vehicle's emergency lights, and Feldbrugge stopped his car.

¶7   Officer Reiner parked behind Feldbrugge's car and approached the car. He told Feldbrugge that he had been pulled over for speeding. Officer Reiner asked Feldbrugge to produce his driver's

2

license, registration and proof of insurance. Feldbrugge had difficulty removing his driver's license from his billfold. Feldbrugge produced proof of insurance after Officer Reiner's second request, and he continued to look for his registration in the glove box.

¶8 Officer Reiner left Feldbrugge's car and walked back towards his patrol vehicle. On the way, he remarked to Deputy Douglas that he did not smell the odor of an alcoholic beverage coming from Feldbrugge, but his speech was slurred.

¶9 Minutes later, Feldbrugge got out of his car, walked to Officer Reiner's patrol vehicle and handed him his registration. Officer Reiner asked Feldbrugge several questions, and Feldbrugge admitted having had a couple of drinks. Officer Reiner testified that Feldbrugge's eyes appeared bloodshot and glassy and that he appeared confused and unsteady on his feet. Officer Reiner did not ask Feldbrugge to perform any field sobriety tests. Officer Reiner testified that after Feldbrugge was asked to extinguish a cigarette, he smelled an odor of alcohol on Feldbrugge.

¶10 Officer Reiner asked Feldbrugge to take a breath test on a portable breath tester (PBT). He told Feldbrugge that if he passed the PBT, he would not be arrested. Officer Reiner further stated that if Feldbrugge did not pass the PBT, he would be arrested for DUI.

¶11 Officer Reiner then read a short advisory which did not contain information regarding Feldbrugge's right to obtain an independent blood test to challenge the PBT results. Feldbrugge

3

consented to the PBT, and Officer Reiner told him that the PBT result was .17 or .18. Officer Reiner later testified that the PBT result was .197. Feldbrugge was arrested and taken to the Mineral County Jail. Before he was administered the intoxilyzer breath test at the jail, he was read the implied consent advisory form, including a statement that he had the right to an independent blood test.

¶12 In the Mineral County Justice Court, Feldbrugge filed a motion to suppress the PBT results and a motion to suppress evidence obtained as a consequence of his arrest without probable cause. The Justice Court conducted a hearing on Feldbrugge's motions and subsequently denied them. Thereafter, Feldbrugge pled guilty to DUI, reserving his right to appeal the denial of his motions to the District Court pursuant to § 46-12-204(3), MCA. The District Court affirmed the Justice Court's denial of Feldbrugge's motion to suppress. Feldbrugge appeals.

## DISCUSSION

¶13 (1) Were Feldbrugge's due process rights violated when the arresting officer informed him of his right to obtain an independent blood test after he administered the portable breath test?

¶14 Our standard of review of a ruling on a motion to suppress where the facts are not in dispute is to determine whether the district court's conclusions of law are correct as a matter of law. *State v. Griggs*, 2001 MT 211, ¶ 17, 306 Mont. 366, ¶17, 34 P.3d 101, ¶ 17 (citation omitted). This Court's review is plenary as to

4

whether the district court correctly interpreted and applied the law. *Griggs*, ¶ 17 (citation omitted).

¶15 Feldbrugge argues that the arresting officer's failure to inform him of his right to an independent blood test to challenge the PBT result violated important policies underlying our decision in *State v. Strand* (1997), 286 Mont. 122, 951 P.2d 552 (*overruled on other grounds by State v. Minkoff*, 2002 MT 29, ¶ 23, 308 Mont. 248, ¶ 23, 42 P.3d 223, ¶ 23). In *Strand*, the Kalispell Police Department had an express policy that law enforcement officers should not read to the accused the implied consent advisory form, which explained the substance of Montana's implied consent statutes, unless or until the accused refused to submit to an officer-designated breath test. *Strand*, 286 Mont. at 125, 951 P.2d at 553. Since Strand submitted to the officer-designated breath test, he was never read the form, and, as a result, he was never informed of his right to obtain an independent blood test. *Strand*, 286 Mont. at 125, 951 P.2d at 553-54.

¶16 We held that due process requires that the arresting officer inform the accused of his or her right to obtain an independent blood test, regardless of whether the accused consents to the test designated by the officer. *Strand*, 286 Mont. at 126, 951 P.2d at 554. We reasoned that due to the evanescent character of blood alcohol evidence, a defendant must be appraised of the right to obtain an independent blood test at the time of the arrest while the blood can still be analyzed. *Strand*, 286 Mont. at 126-27, 951 P.2d at 554. We also noted that a person accused of driving under

5

the influence of alcohol does not have a right to counsel before submitting to a breath test and, therefore, the arresting officer is the only person in a position to inform the defendant of his right to an independent blood test. We held that the arresting officer thus has an affirmative duty to inform a defendant of this right. *Strand*, 286 Mont. at 127, 951 P.2d at 554-55.

¶17 Feldbrugge insists that although he was informed of his right to an independent blood test after his arrest and before the intoxilyzer breath test, the notice came too late for Feldbrugge to make a fully informed decision as to whether to take the PBT at the side of the road. He urges the Court to require law enforcement officers to inform individuals of the right to an independent blood test for every breath test an officer requests.

¶18 The District Court concluded that the facts in *Strand* differed remarkably from the facts in this case. It stated that unlike the defendant in *Strand*, who was never informed of his right to an independent blood test, Feldbrugge was informed of his right to the test after arrest and prior to the officer's request for a police administered intoxilyzer breath test. The court concluded that Feldbrugge's due process rights were not violated because he was appraised of the right to an independent blood test while his blood could still be analyzed to detect the presence of alcohol.

¶19 The State urges this Court to uphold the District Court's conclusions of law. The State claims that the arresting officer in this case complied with *Strand* when he informed Feldbrugge of his right to an independent blood test after his arrest and at a time

6

when he was able to meaningfully exercise the right. The State maintains that our holding in *Strand* involves a DUI defendant's right to attempt to obtain potentially exculpatory evidence and does not implicate the separate right of such a defendant to refuse to submit to a breath test which has been requested under Montana's implied consent statutes.

¶20 We agree. Feldbrugge apparently argues that had he been informed of his right to an independent blood test, he might have refused to consent to the PBT. However, the notion that Feldbrugge had a choice between submitting to a PBT or obtaining an independent blood test, without penalty, is misguided.

¶21 Every person who operates a motor vehicle in the state of Montana has impliedly consented to a blood or breath test for the purpose of determining the presence or amount of alcohol or drugs in the body. Section 61-8-402(1), MCA. A person may refuse to submit to the test, but his or her driver's license will be immediately seized and suspended. Section 61-8-402(4), MCA. A person may obtain an independent test in addition to the test administered at the direction of an officer. Section 61-8-405(2), MCA.

¶22 The corresponding right to an independent blood test, as discussed in our *Strand* decision, involves the right to obtain exculpatory evidence and is separate from the obligation to submit to an officer-designated test pursuant to Montana's implied consent statutes. For instance, had Feldbrugge been informed of his right to an independent blood test prior to consenting to the PBT, his

7

options remained the same: he could have consented to the PBT or he could have refused it and had his driver's license seized. Consequently, there was no reason for the arresting officer to inform him of his right to an independent blood test prior to requesting the PBT. Rather, under *Strand*, the arresting officer was required to timely inform Feldbrugge that he could obtain an independent blood test in addition to the PBT and intoxilyzer so that Feldbrugge might gather potential exculpatory evidence.

¶23 We hold that Feldbrugge's due process rights were not violated when the arresting officer informed him of his right to obtain an independent blood test after he administered the PBT. The District Court properly affirmed the Justice Court's denial of Feldbrugge's motion to suppress.

¶24 (2) Was Feldbrugge's arrest supported by probable cause?

¶25 Feldbrugge concedes that at the time of his arrest, Officer Reiner had a particularized suspicion that he was under the influence of alcohol. However, Feldbrugge insists that without the PBT results, the officer lacked probable cause to arrest him for DUI and that all the evidence gathered as a result of the arrest should be suppressed. Since we hold that the PBT results are admissible, we conclude that Feldbrugge's arrest was supported by probable cause.

/S/ W. WILLIAM LEAPHART

We concur:

8

/S/ KARLA M. GRAY
/S/ TERRY N. TRIEWEILER
/S/ PATRICIA COTTER
/S/ JIM RICE