No. 03-681

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 373

STATE OF MONTANA,

Plaintiff and Respondent,

v.

KATI KINTLI,

Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis and Clark, Cause No. CDC 2002-271,
The Honorable Thomas Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Wendy Holton, Attorney at Law, Helena, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Robert Stutz,
Assistant Attorney General, Helena, Montana

Robert J. Wood, Helena City Prosecutor, Helena, Montana

Submitted on Briefs: May 11, 2004

Decided: December 27, 2004

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1      Kintli was convicted of driving under the influence of alcohol ("DUI") *per se* in city court and appealed to the District Court. Kintli moved the District Court to suppress results of an Intoxilyzer 5000 test. The District Court denied her motion and Kintli, reserving her right to appeal, pled guilty to DUI *per se*. The District Court subsequently entered judgment sentencing Kintli. We affirm.

¶2      Kintli raises the following issue on appeal which we restate as follows:

¶3      Did the District Court err by denying defendant's motion to suppress the results of a detention center breath test administered before the reading of an Implied Consent Advisory?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4      In September 2002, law enforcement stopped Kintli's vehicle because they observed it crossing the centerline several times. Upon communicating with Kintli the investigating officer suspected that she was under the influence of alcohol.

¶5      The officer initiated field sobriety tests and read Kintli the preliminary alcohol screen test advisory. Kintli agreed to provide a breath sample. The results of the test indicated that Kintli had a blood alcohol concentration ("BAC") in excess of the legal limit. Based upon this preliminary test the officer arrested Kintli for DUI and took her the county detention center.

¶6      At the detention center Kintli refused to repeat field sobriety tests after her request to use the restroom first was denied. Kintli advised the officer that she just wanted to take the breath test. The officer administered the Intoxilyzer 5000 test which resulted in a BAC

2

of .262. Following the test, the officer read Kintli the consent advisory. After reading the advisory the officer offered to void the test and administer a new one, or just stay with the one which had already been done. Kintli indicated that she did not want to retake the test stating that nothing was going to change.

¶7 Kintli was found guilty of DUI *per se* in city court and appealed to the District Court for a trial *de novo*. Kintli moved the District Court to suppress the results of the Intoxilyzer 5000 test because the officer had failed to read the implied consent advisory to her prior to administering the test. Her motion was denied. Kintli then pled guilty to DUI *per se,* preserving her right to appeal the suppression denial and this appeal followed.

## STANDARD OF REVIEW

¶8 A district court's denial of a criminal defendant's motion to suppress is reviewed on appeal to determine whether the court's findings of fact are clearly erroneous, and whether those findings were correctly applied as a matter of law. *State v. Turbiville,* 2003 MT 340, ¶ 10, 318 Mont. 451, ¶ 10, 81 P.3d 475, ¶ 10.

## DISCUSSION

¶9 Did the District Court err by denying defendant's motion to suppress the results of a detention center breath test administered before the reading of an Implied Consent Advisory?

¶10 Following Kintli's arrest and transportation to the detention center the officer requested that Kintli repeat the field sobriety maneuvers. Kintli refused stating she wanted to "give the breath test and be done." She then took a blood alcohol test using an Intoxilyzer 5000. Realizing that he had neglected to read Kintli the implied consent advisory, the officer

then did so. Following this advisory, the officer offered to void the test and retest. Kintli declined, opting to stay with the first result. Based upon these facts, the District Court denied Kintli's motion to suppress the Intoxilyzer 5000 results.

¶11 Kintli first argues that her due process right to obtain exculpatory evidence was violated by the officer's failure to advise her of the right to independent blood testing prior to administering the breath test at the detention center.

¶12 An accused must be timely informed of their right to an independent blood test due to the evanescent character of blood alcohol evidence. *State v. Feldbrugge,* 2002 MT 154, ¶ 16, 310 Mont. 368, ¶ 16, 50 P.3d 1067, ¶ 16; *State v. Strand* (1997)*,* 286 Mont. 122, 126, 951 P.2d 552, 554 (overruled on other grounds by *State v. Minkoff*, 2002 MT 29, 308 Mont. 248, 42 P.3d 223).

¶13 Kintli mistakenly relies on *Strand* for the proposition that she could not knowingly and intelligently submit to the breath test in the absence of an advisory regarding her right to independent testing. In *Strand,* the defendant submitted to a BAC test without a prior reading of the advisory pursuant to an express department policy that officers read the implied consent advisory form only when the arrested person first refuses to submit to the BAC test. *Strand,* 286 Mont. at 124, 951 P.2d at 553. This policy raised the concern that consenting individuals, like Strand, were never advised of their right to obtain an independent blood test for the purpose of obtaining exculpatory evidence. *Strand,* 286 Mont. at 125, 951 P.2d at 553. This is not the issue now before the Court. Here, there is no question that Kintli, having consented to testing, was timely advised of her right to obtain an independent blood test.

¶14 "[D]ue process requires that the arresting officer inform the accused of his or her right to obtain an independent blood test, regardless of whether the accused consents to the test designated by the officer." *Strand,* 286 Mont. at 126, 951 P.2d at 554. Because the right to independent blood testing remains constant regardless of whether the suspect refuses or submits to testing, Kintli's argument that the officer's failure to advise her of this right before she consented invalidates her consent is nonsensical. Here, Kintli was timely advised of her right to obtain independent blood testing.

¶15 The argument raised by Kintli was addressed by this Court in *State v. Feldbrugge,* 2002 MT 154, 310 Mont. 368, 50 P.3d 1067. There, the defendant was pulled over for speeding. *Feldbrugge,* ¶¶ 5-6. Officers suspected that defendant was DUI and asked him to submit to a portable breath test. *Feldbrugge,* ¶¶ 9-10. The officer read a short advisory that did not inform defendant of his right to an independent blood test. *Feldbrugge,* ¶ 11. Defendant consented to the test, blew over the legal limit, was arrested and transported to jail. *Feldbrugge,* ¶ 11. At the jail the officer read defendant the implied consent advisory form, including a statement that defendant had the right to an independent blood test, prior to administering the intoxilyzer breath test. *Feldbrugge,* ¶ 11. Defendant moved to suppress the breath test results based upon the officer's failure to inform him of his right to obtain an independent blood test *before* the test, arguing that providing the information after the test denied him the ability to make a fully informed decision as to whether to take the breath test. *Feldbrugge,* ¶¶ 12, 17. There, the district court concluded, and we affirmed, that the timely subsequent warning was sufficient to protect the defendant's right to obtain an independent blood test. *Feldbrugge,* ¶ 18.

5

¶16 Likewise, in this case, the officer's timely efforts in advising Kintli of her right to obtain exculpatory evidence via independent blood testing was sufficient to safeguard her due process rights.

¶17 Kintli also argues that the officer's failure to read the implied consent advisory prior to the administration of the breath test at the detention center invalidated her consent.

¶18 Section 61-8-409(3), MCA, requires an officer to advise one submitting to a preliminary breath test ("PBT") of the right to refuse and penalties associated with a refusal. We have further required that for this statutory section to have meaning, the notice of the right of refusal and the consequences of refusal necessarily must precede the testing. *State v. McKenzie,* 2001 MT 25, ¶ 10, 304 Mont. 153, ¶ 10, 19 P.3d 221, ¶ 10. There is no dispute that here Kintli was properly advised, in accordance with that statute, in the field prior to submitting to the PBT. However, no similar statutory requirement is found as to other BAC tests, such as the Intoxilyzer 5000, conducted after arrest. Regardless, Kintli does not dispute that she was read the standardized Implied Consent Advisory following the Intoxilyzer 5000 test and that the officer offered to void the test and allow her to retest or to stay with the previous result.

¶19 We have, in dicta, discussed whether Montana law requires an officer to advise an *arrested* motorist of his or her right to refuse a blood alcohol content test and the ramifications of such refusal. *See State v. Turbiville,* 2003 MT 340, 318 Mont. 451, 81 P.3d 475; *see also State v. Simmons,* 2000 MT 329, ¶ 17, 303 Mont. 60, ¶ 17, 15 P.3d 408, ¶ 17. "[T]he option to refuse a breath or blood test is not a matter of due process, but a matter of grace bestowed by the Legislature." *Turbiville,* ¶ 16. "Montana's implied consent statutes

6

do not specifically require an officer to provide information to an arrested motorist as to the ramifications of refusal to take the requested test." *Turbiville,* ¶ 16; *Simmons,* ¶ 17. Indeed, we have recognized that a driver is not even entitled to be informed that he or she may refuse the test. *Turbiville,*¶ 16; *Simmons,* ¶ 17. "The purpose of the Implied Consent Advisory is to inform an apparently intoxicated driver of the potentially serious consequences of refusing to submit to a blood alcohol test and of his due process protections such as rights to independent testing and post-testing hearings." *Simmons,* ¶ 17.

¶20 Under the implied consent statutes, an individual has impliedly consented to the testing of her blood or breath. However, implicit under this statute is the right to refuse testing and suffer the consequences thereof. Here, Kintli requested the Intoxilyzer test, following a field advisory regarding the consequences of a refusal to take a PBT. Following the Intoxilyzer 5000 test, the officer read the implied consent form and offered to void the test already taken. He also offered the options of taking the test again, or using the prior test. Kintli opted to keep the prior test, but now complains that her consent was invalid because she did not have the option to refuse testing–we disagree. Kintli was informed of her options and chose to stay with the first test. Under these facts we affirm the District Court's conclusion that Kintli knowingly, intelligently and voluntarily consented to the breath test.

## CONCLUSION

¶21 The District Court is affirmed.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JIM REGNIER