No. 05-130

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 331

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

SHEILA LITSCHAUER,

        Defendant and Appellant.

APPEAL FROM:    The District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 2004-25,
Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

           Peter B. Ohman, Public Defender, Bozeman, Montana

        For Respondent:

           Honorable Mike McGrath, Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana

           Jon M. Hesse, City Prosecutor, Belgrade, Montana

                              Submitted on Briefs:  October 26, 2005
                                      Decided:  December 20, 2005

Filed:

                                       Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     This decision arises out of a charge in Belgrade City Court of driving under the influence of alcohol.  The City Court granted Sheila Litschauer's motion to suppress evidence, and the State appealed.  Litschauer pled guilty in the Eighteenth Judicial District Court to operating a non-commercial motor vehicle with a blood alcohol level greater than .08, third offense, a misdemeanor, in violation of § 61-8-406, MCA.  Prior to entering her guilty plea, Litschauer moved to suppress all evidence flowing from the stop by the arresting officer, but the District Court denied her motion.  Litschauer now appeals the denial of her motion to suppress.  We affirm.

¶2     We address the following issue on appeal: Did the District Court err when it denied Litschauer's motion to suppress?

## BACKGROUND

¶3     On the night of August 9, 2003, an anonymous female in Belgrade, Montana, called 911 and stated that she had seen a woman outside yelling, "You got what you want, now get the f--- out of here."  The caller claimed that she had seen the woman enter a maroon Chevrolet, bang her head on the headrest and the steering wheel, and then get out of the car and go "ballistic."  While reporting the incident, the caller saw the woman hit her head on the headrest inside the Chevrolet and then get out and bang her head on the outside of the vehicle; the caller then viewed the woman reenter the car and drive away.  Before disconnecting, the 911 caller described the car again and stated that the woman "was heading south on Jackrabbit [Lane]."

2

¶4     The 911 dispatcher in receipt of the anonymous phone call alerted police officers that she received a report of a "disturbance at 503 South Circle . . . [where a] female was screaming earlier and . . . banging her head on the car"; the dispatcher also described the car and the direction it was heading.  Officer Bill Todd, who happened to be driving north on Jackrabbit Lane, heard the dispatcher's report; seeing a maroon Chevrolet matching the car description from dispatch, Officer Todd turned around, activated his emergency lights and stopped the car.  He then approached the driver—Litschauer—and informed her of the 911 call.   Detecting a strong odor of an alcoholic beverage coming from Litschauer, and noting her slurred speech and glassy eyes, Officer Todd gave Litschauer a preliminary breath test that indicated her alcohol concentration to be over the legal limit; the officer then took Litschauer to the police station where a breath test showed her alcohol concentration to be .193.   The State subsequently charged Litschauer with operating a non-commercial motor vehicle with a blood alcohol level greater than .08, third offense, a misdemeanor, in violation of § 61-8-406, MCA, and with operating a vehicle with no liability insurance, in violation of § 61-6-301, MCA.  Litschauer pled not guilty to the charges.

¶5     Litschauer filed a motion to suppress, arguing at the suppression hearing that Officer Todd improperly pulled her over and therefore all evidence flowing from the arrest should be suppressed.  The District Court denied the motion, concluding that under the "community caretaker doctrine" and in accordance with the test established in *State v. Lovegren*, 2002 MT 153, 310 Mont. 358, 51 P.3d 471, Officer Todd "had the right, and

3

the duty, to stop the vehicle and investigate the welfare of the driver who was the subject of the 911 call." Litschauer eventually signed a plea agreement whereby she pled guilty to driving under the influence of alcohol in violation of § 61-8-406, MCA, but reserved the right to appeal the District Court's denial of her motion to suppress. For the reasons explained below, we affirm the court's decision.

## STANDARD OF REVIEW

¶6 "A district court's denial of a criminal defendant's motion to suppress is reviewed on appeal to determine whether the court's findings of fact are clearly erroneous, and whether those findings were correctly applied as a matter of law." *State v. Kintli*, 2004 MT 373, ¶ 8, 325 Mont. 53, ¶ 8, 103 P.3d 1056, ¶ 8.

## DISCUSSION

¶7 "Police officers have a duty not only to fight crime, but also to investigate uncertain situations in order to ensure the public safety. This community caretaker function of the police is typically the least intrusive form of contact between a police officer and the public." *State v. Nelson*, 2004 MT 13, ¶ 6, 319 Mont. 250, ¶ 6, 84 P.3d 25, ¶ 6. This Court applies a three-part test when determining whether an officer had justification for initiating contact with a citizen based on the "community caretaker doctrine." *Lovegren*, ¶ 25.

> First, as long as there are objective, specific and articulable facts from which an experienced officer would suspect that a citizen is in need of help or is in peril, then that officer has the right to stop and investigate. Second, if the citizen is in need of aid, then the officer may take appropriate action to render assistance or mitigate the peril. Third, once, however, the officer is assured that the citizen is not in peril or is no longer in need of assistance

4

or that the peril has been mitigated, then any actions beyond that constitute a seizure implicating not only the protections provided by the Fourth Amendment, but more importantly, those greater guarantees afforded under Article II, Sections 10 and 11 of the Montana Constitution as interpreted in this Court's decision.

¶8 In *Lovegren*, an officer stopped to investigate after coming upon a vehicle parked on the side of a highway with the motor running and the headlights off. *Lovegren*, ¶ 3. Upon approaching the vehicle and looking in the window, the officer saw the defendant—apparently asleep—and knocked on the window. *Lovegren*, ¶ 4. Lovegren suddenly awoke and stated: "I was drinking." *Lovegren*, ¶ 4. Smelling alcohol and seeing other signs of inebriation, the officer performed various field sobriety tests, which Lovegren failed. *Lovegren*, ¶ 4. The officer cited Lovegren for driving under the influence of alcohol after Lovegren failed another breath test at the police station. *Lovegren*, ¶ 4. Lovegren moved to suppress all evidence obtained by the arresting officer, claiming it was an illegal search and seizure. *Lovegren*, ¶ 5. The State argued in response that the officer appropriately stopped Lovegren under the "community caretaker doctrine" and that "Lovegren's subsequent actions that created a particularized suspicion of criminal activity, [did] not negate the validity of [the officer's] initial stop to see if Lovegren needed assistance." *Lovegren*, ¶ 12. Applying the community caretaker doctrine and its three-part test, we agreed with the State, concluding that "[u]nder these circumstances, [the officer] had the right to check on Lovegren's welfare and to open the door of Lovegren's vehicle when Lovegren failed to respond to a knock on the window of his vehicle." *Lovegren*, ¶ 26. We noted that once the officer observed signs of

5

intoxication, he had "particularized suspicion to make a further investigatory stop—i.e., the field sobriety tests—which eventually developed into probable cause for an arrest. This escalation of events leading to Lovegren's arrest is proper under our decisions . . . ." *Lovegren*, ¶ 27 (citations omitted).

¶9      We applied the *Lovegren* test in *Nelson*, ¶ 4, ¶ 8, where an officer approached the driver of a pickup truck after noticing the vehicle pulled off to the side of a rural highway with the engine running on an extremely cold New Year's Day.  When the officer reached the truck door, Nelson woke up and stared ahead, failing to acknowledge the officer's presence until she opened the door.  *Nelson*, ¶ 4.  Nelson filed a motion to suppress, arguing that the officer had no particularized suspicion to stop his vehicle. *Nelson*, ¶ 1.  We concluded that "[u]nder these circumstances, [the officer] was correct to approach Nelson's vehicle to check on his welfare."  *Nelson*, ¶ 9.  We further noted that the officer had "more than enough justification" to undertake further investigation after smelling alcohol and observing Nelson's blood-shot eyes.  *Nelson*, ¶ 9.

¶10      The case at hand presents similar circumstances to those in *Lovegren* and *Nelson*. Officer Todd stopped Litschauer to check on her welfare after hearing a report from dispatch of a "disturbance at 503 South Circle . . . [where a] female was screaming earlier and . . . banging her head on the car."  In accordance with his duty, Officer Todd appropriately inquired as to whether Litschauer needed assistance.  Officer Todd's subsequent observation of Litschauer's intoxication justified his further investigation.

6

¶11   Litschauer contends that the District Court should have granted her motion to suppress because Officer Todd did not have "specific and articulable facts" for concluding that Litschauer was "in need of help or [was] in peril"—thereby failing to satisfy the first prong of the *Lovegren* three-part test. Specifically, Litschauer contends that Officer Todd only knew of a "disturbance" at 503 South Circle—that he was unaware of any further details before stopping Litschauer. In other words, Litschauer asserts that although the anonymous caller provided specific and articulable facts to the 911 dispatcher, these facts were not relayed to the officer. The thrust of Litschauer's appeal is that information known only to a 911 dispatcher may not be imputed to police officers.

¶12   Officer Todd stated during the suppression hearing that he knew of "an anonymous phone call" and a "disturbance" at 503 South Circle. Based on this very limited statement, Litschauer contends "that Officer Todd did not have specific, articulable facts indicating [that she] was in need of help or in peril." Litschauer's argument, however, fails to recognize that the 911 tape has the dispatcher providing more significant information than that of a mere "disturbance" occurring at 503 South Circle. The recording reveals that the dispatcher advised Officer Todd and his partner that there was a "disturbance at 503 South Circle . . . [where a] female was screaming earlier and . . . banging her head on the car." This information was provided to Officer Todd prior to his stopping Litschauer. Thus, while Litschauer correctly notes that during the suppression hearing Officer Todd generally described the 911 dispatcher's information as

"some type of disturbance at the residence," the 911 tape clearly indicates that Officer Todd stopped Litschauer based on more detailed information—that is, that she was screaming and banging her head on the car. Because these specific and articulable facts were directly relayed to Officer Todd, there is no need to discuss the theory of imputed knowledge.

¶13 Under the community caretaker doctrine, law enforcement appropriately stopped Litschauer, and justifiably proceeded with further investigation after observing signs of intoxication.

¶14 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS

8