JUSTICE COTTER
dissents.
¶28 I dissent. I think we have stretched the community caretaker doctrine to the breaking point under the facts presented here. I would conclude the District Court erred in applying the doctrine in this case.
*186 ¶29 As noted by the Court at ¶ 18, our test in Lovegren requires “objective, specific and articulable facts from which an experienced officer would suspect that a citizen is in need of help or in peril ....” Such facts clearly existed in the three cases cited by the Court. See Lovegren (vehicle parked on the side of the highway at 3:00 a.m. in remote Richland County, with engine running and lights off); Seaman (car parked on the shoulder of the off-ramp on the interstate, sub-zero windchills, and a driver outside the car with both passenger doors open); and Nelson (car parked at night on the highway, engine running, zero degrees, and no driver visible as the officer passed by). Here, by contrast, we have a car legally parked on a city street on a summer evening, occupied by a driver and passenger engaged in conversation. The remoteness, darkness, and/or weather concerns that focused the attentions of both the investigating officers and this Court in the above-cited cases are completely absent.
¶30 The facts with which this officer was presented were neither objectively or specifically sufficient to lead an experienced officer to conclude that these vehicle occupants were in need of help. Even Dalton conceded as much, when he said that not all of his observations indicated that the occupants of the car were in peril. Court’s Opinion, ¶ 9. Here there was simply no threat, as there was in the other cases, that, if left alone, Wheeler or her passenger might come to harm, nor was there any objective indication that either occupant of the car was in need of an officer’s assistance.
¶31 Since we first recognized the “community caretaker” doctrine in Lovegren in 2002, no fewer than five cases have reached this Court in which the doctrine has been offered as justification for a police investigation. See Nelson, Seaman, and State v. Reiner, 2003 MT 243, 317 Mont. 304, 77 P.3d 210; State v. Smith, 2004 MT 234, 322 Mont. 466, 97 P.3d 567; and State v. Litschauer, 2005 MT 331, 330 Mont. 22, 126 P.3d 456. There is no way to know how many others were resolved under such grounds but not appealed. It is thus apparent that the doctrine has quickly taken on a life of its own.
¶32 While the public safety function of police investigation is undoubtedly legitimate and important, so too are the privacy rights of persons lawfully occupying vehicles under circumstances that objectively suggest neither peril nor a need for assistance. In concluding that the community caretaker doctrine test was satisfied under the benign conditions presented here, I fear we have lowered the bar for what constitutes an “objective, specific and articulable” circumstance indicating peril, to a level far lower than was intended *187 under the doctrine. Apparently, the District Court thought so too, indicating on the record-before making its findings of fact and conclusions of law — that in its opinion, our cases have already set a threshold that is too low. The court was reluctant to be the arbiter of what the threshold should be, but observed: “If it was up to me to determine what quantum of facts — minimum quantum of facts were sufficient to justify the caretaker stop, it would require something a little more, in my mind.”
¶33 I agree with the District Court. More than what we have here should be required. What that “more” is cannot be quantified with exactitude, for each case presents its own unique facts. However, we can and should say what is not enough. I would do so, and would start here; otherwise, I fear that the rule requiring particularized suspicion in police-citizen encounters unless a legitimate community caretaker concern presents itself, will be swallowed by this exception.
¶34 I therefore dissent.
CHIEF JUSTICE GRAY joins in the dissent of JUSTICE COTTER.