JUSTICE COTTER
dissents.
¶23 I dissent from the Court’s decision to impose upon Reavely the burden of demonstrating that the State’s PAST evidence was reliable. In my view, Reavely was entitled to present the PAST evidence in support of his reasonable-doubt argument without first having to present the same proof of reliability that we require when the State seeks to use PAST evidence to carry its burden of proof beyond a reasonable doubt.
¶24 After leaving the Eagle’s Club on the evening in question, Reavely attempted to back his pickup truck out of a diagonal parking space on Pinckney Street. In the process, his truck scraped a vehicle in an adjacent parking space. Reavely remained at the scene and Officer Painter arrived several minutes later. Approximately sixty minutes after this accident, Officer Painter administered a PAST, also known as a preliminary breath test (“PBT”), which indicated that Reavely’s BAC was approximately 0.136. Then, roughly twenty-one minutes later, and after he had arrested Reavely, Officer Painter administered the Intoxilyzer 5000 breath test which measured Reavely’s BAC at 0.187.
¶25 At trial, the State introduced the results of the Intoxilyzer 5000 breath test as evidence that Reavely’s BAC was above 0.08 when he attempted to drive away from the Eagle’s Club. Reavely did not dispute that his BAC was substantially above the legal limit when the *157 two breath tests were administered. Nor did he dispute the accuracy of either of the breath test results. Rather, he attempted to demonstrate that the jury could find a reasonable doubt as to whether his BAC had reached 0.08 at the time when he attempted to back his truck out of the parking space, over an hour before the Intoxilyzer 5000 test result was rendered.
¶26 To that end, Reavely’s counsel solicited testimony from Ben Vetter (‘Vetter”), an employee of the Breath Analysis Section of the Montana State Crime Lab. Vetter is a certified technician of the portable and non-portable breath analysis instruments used by Montana law enforcement agencies. Additionally, he conducts training at the Montana Law Enforcement Academy regarding, inter aha: (1) the proper operation of portable and non-portable breath analysis instruments approved for use in Montana; and (2) pharmacology and toxicology, including scientific explanation regarding the process by which alcohol is absorbed into the blood and the resulting impairment of one’s faculties.
¶27 Vetter testified that a person’s BAC does not reach a peak immediately after alcohol consumption; rather, BAC rises over a period of time based on a number of factors unique to the individual. Vetter also acknowledged that in certain circumstances it is possible for a person to drink three or four alcoholic beverages in a short period of time and then drive a vehicle for up to five minutes without suffering from the impairing effects of the alcohol. Additionally, Reavely testified that it takes only four minutes to drive from the Eagle’s Club to his home, and that he did not believe he was impaired when he entered his truck on the night in question.
¶28 Reavely’s counsel argued that the State’s evidence did not dispel reasonable doubt that Reavely’s BAC had been below the legal limit at the time of the accident and then had gradually risen to the level detected by the Intoxilyzer 5000. In support of this argument, and in conjunction with the aforementioned evidence, Reavely’s counsel sought to introduce the result of the PBT administered by Officer Painter. However, as counsel explained to the District Court, he did not seek to present the PBT result as an accurate indicator of Reavely’s BAC. Rather, contrary to the assertion of Justice Leaphart in his concurrence, Reavely merely sought to present the PBT result as a broad estimate which the jury could contrast with the significantly higher result rendered approximately twenty-one minutes later by the Intoxilyzer 5000 test. Based on this comparative analysis, counsel argued, he would ask the jury to consider the possibility that Reavely’s *158 post-accident BAC was rising in a manner that could indicate his BAC may have been below 0.08 when the accident actually occurred.
¶29 The State argued that PBT results are inadmissible per se under this Court’s decision in State v. Snell, 2004 MT 334, 324 Mont. 173, 103 P.3d 503. Specifically, the State argued: “PBTs have been held to not be admissible.... [I]t’s, per se, not admissible. And that’s what the Supreme Court found in Snell”
¶30 In fact, we did not create any such “per se” rule in Snell. Rather, we simply held that the PBT result in that case was inadmissible because the State offered it for the purpose of proving the defendant’s BAC, and the State failed to demonstrate that the PBT result was reliable. Snell, ¶¶ 37-38, 43. Yet, the District Court apparently agreed that Snell creates a “per se” rule of inadmissibility, concluding that admission of the PBT result would create “a test case to overturn the Supreme Court’s decision in Snell.” Thus, the District Court ruled that the PBT result was not admissible for any purpose.[1] I disagree.
¶31 We have consistently held that a PBT result is not admissible as evidence of guilt in a DUI prosecution unless it is first shown to be rehable. State v. Weldele, 2003 MT 117, ¶¶ 57-58, 315 Mont. 452, ¶¶ 57-58, 69 P.3d 1162, ¶¶ 57-58; State v. Crawford, 2003 MT 118, ¶ 20, 315 Mont. 480, ¶ 20, 68 P.3d 848, ¶ 20; Snell, ¶¶ 35-38 (“[T]he State has the burden of offering scientific and expert testimony to firmly establish the [PBT’s] reliability and accuracy.”). It is entirely appropriate that this burden of proof is triggered by the State’s use of PBT results because a DUI prosecution directly implicates a fundamental constitutional right of the citizen being charged-i.e., the right to due process. Due process requires that a defendant must be presumed innocent at every stage of the trial, and that the State must prove each element of the charged offense beyond a reasonable doubt in order to overcome the presumption of innocence. Section 46-16-204, MCA; State v. Newman, 2005 MT 348, ¶ 26, 330 Mont. 160, ¶ 26, 127 P.3d 374, ¶ 26; State v. McCaslin, 2004 MT 212, ¶ 24, 322 Mont. 350, ¶ 24, 96 P.3d 722, ¶ 24; State v. Gilbert, 125 Mont. 104, 109, 232 P.2d 338, 341 (1951) (“The presumption of innocence surrounds the defendant at every step in the trial and to its benefits he is entitled in *159 the determination of every fact by the jury.”).
¶32 The due process guarantee simply does not allow a DUI prosecution to proceed upon evidence that is not demonstrably reliable. Thus, because the defendant is presumptively innocent, and because the State bears the burden of presenting proof that dispels all reasonable doubt, the State must present affirmative proof of reliability before utilizing a PBT result as evidence of intoxication. Weldele, ¶¶ 57-58; Crawford, ¶ 20; Snell, ¶ 35. Without such proof of reliability, there is a risk that the trial could be fundamentally unfair-i.e., a risk that the defendant could be found guilty based on an inaccurate PBT result. Crawford, ¶ 18; Weldele, ¶¶ 55, 57 (because jurors tend to accord great weight to evidence that is scientific in nature, PBT results could be the determining factor in a finding of guilt).
¶33 This brings us to one of the most basic tenets of evidence law-the principle that admissibility of a particular piece of evidence must be determined in light of the purpose for which that evidence is offered. See State v. Bingman, 2002 MT 350, ¶ 34, 313 Mont. 376, ¶ 34, 61 P.3d 153, ¶ 34; McDermott v. Carie, LLC, 2005 MT 293, ¶ 20, 329 Mont. 295, ¶ 20, 124 P.3d 168, ¶ 20; M. R. Evid. 105. Indeed, “[n]o issue concerning the admissibility of evidence can be resolved without answering[:] What is the purpose of the evidence being offered?” David P. Leonard, The New Wigmore: Selected Rules of Limited Admissibility § 1.1 (rev. ed., Aspen Publishers 2002). It is well established, in the Montana Rules of Evidence and our precedents, that a piece of evidence may be categorically inadmissible when offered for one purpose, and yet be admissible in the same proceeding when offered for a different purpose. For example, evidence of other crimes committed by a defendant is not admissible for the purpose of proving character in order to show action in conformity therewith; however, that evidence is admissible for other limited purposes such as proving motive. M. R. Evid. 404(b). Similarly, a defendant’s statements made in connection with a guilty plea that was later withdrawn are generally inadmissible as evidence against that defendant; however, they are admissible when offered for the limited purpose of impeachment. M. R. Evid. 410.[2]
*160 ¶34 While we have consistently held that PBT results are inadmissible without affirmative proof of reliability, we have applied that rule only in cases in which the PBT evidence is offered by the State for the purpose of proving guilt. However, the very reasons for the existence of this admissibility rule demonstrate that it should not apply where the PBT evidence is offered by the defendant and for a different, more limited purpose. Reavely’s proposed use of the PBT evidence did not implicate any constitutional protections applicable in criminal trials; it was not offered in satisfaction of any burden of proof; and it was not offered for the purpose of overcoming any constitutionally mandated presumptions. Moreover, Reavely’s proposed use of the PBT result could not possibly have caused any prejudice to the State because, as we have held, when an Intoxilyzer test result indicating an illegally high BAC has been admitted at trial, the admission of a PBT result also showing an illegally high BAC is merely redundant and therefore non-prejudicial. Weldele, ¶ 63.
¶35 Thus, because each of the reasons for the existence of this admissibility rule is inapposite here, where the PBT result was offered for a limited purpose not contemplated by any of our precedents, the burden to prove reliability should not apply to Reavely’s proposed use of the PBT evidence.
¶36 As noted above, Reavely sought to introduce the PBT result as nothing more than an estimate of his BAC roughly twenty-one minutes before the Intoxilyzer 5000 test was conducted. He expressly did not seek to establish any particular BAC level with this evidence, nor did he even seek to affirmatively “prove” that his BAC level was rising. Indeed, he was presumed innocent and therefore had no burden to “prove” anything at all.[3] Rather, he simply sought to use the PBT evidence as an estimate in support of his reasonable-doubt argument-i.e., the argument that even though his BAC was in fact illegally high after the accident, the State’s evidence did not dispel reasonable doubt that his BAC may have been below the legal limit at the time the accident occurred.
¶37 Montana’s statutes, Administrative Rules, and this Court’s *161 decisions recognize that a PBT result is in fact an estimate of BAC. See § 61-8-409(1), MCA (the purpose of a PBT is “estimating the person’s alcohol concentration”); Admin. R. M. 23.4.201(8)(b), (26) (PBT instruments “provide an estimated value of alcohol concentration”); Weldele, ¶¶ 6, 50. Accordingly, Reavely’s counsel expressly indicated to the District Court that he would not introduce the PBT result as an indicator of any specific BAC level, but merely as an estimate or a broad range within which Reavely’s BAC fell. Further, counsel expressly recognized that PBT results are not “accurate” and indicated that he would communicate that fact to the jury. In short, Reavely sought to present the PBT evidence as precisely what the law recognizes it to be-an estimate of his BAC.
¶38 Our precedent acknowledges that the estimate rendered by a PBT is reliable enough for certain purposes. As we have recognized, in determining whether probable cause exists to justify a warrantless arrest, law enforcement officers may rely on PBT results along with other factors such as the officer’s own observations and the suspect’s performance in field sobriety tests. State v. Ditton, 2006 MT 235, ¶ 54, 333 Mont. 483, ¶ 54, 144 P.3d 783, ¶ 54. In fact, PBT results may be a critical factor in determining whether probable cause exists for a warrantless arrest. See State v. Feldbrugge, 2002 MT 154, ¶¶ 5-11, 310 Mont. 368, ¶¶ 5-11, 50 P.3d 1067, ¶¶ 5-11 (where the defendant was stopped for exceeding the speed limit and was not asked to perform any field sobriety tests, the PBT result of 0.197 was the deciding factor in the officer’s determination that probable cause existed after the defendant “admitted having had a couple of drinks” and the officer observed, among other things, that the defendant smelled of alcohol, his speech was slurred, and his eyes appeared bloodshot and glassy). ¶39 Here, Officer Painter relied in part on the PBT result in determining that probable cause existed to justify a warrantless arrest of Reavely. Additionally, the State further relied on the PBT result by citing it as evidence in support of its motion for leave to file the DUI charge against Reavely. Yet, despite this reliance, and despite the fact that the State is required by law to take extensive measures to ensure PBT reliability,[4] the State nonetheless insists that the burden of *162 demonstrating reliability-which we have traditionally imposed only where the State uses PBT evidence for the purpose of proving guilt beyond a reasonable doubt-must somehow shift to Reavely in this case. However, we have never held-before today-that a party must establish PBT reliability when the test result is offered for some purpose other than proving guilt. Moreover, as Reavely clearly indicated at trial, he would not have asked the jury to rely on the PBT result to any greater extent than the State itself had already relied on it.
¶40 Given that the State is legally required to ensure PBT reliability by adhering to the stringent Administrative Rules, and given that the State relied on the PBT result to arrest Reavely without a warrant, thereby implicating his constitutional liberty interest (the right to be free from unreasonable seizure, Mont. Const, art. II, § 11), I conclude that it is fundamentally unfair to require that Reavely demonstrate the PBT’s reliability when he sought to introduce the test result solely as an estimate of BAC for the limited purpose of making a comparison supporting his reasonable-doubt argument. After all, the PBT result is the State’s own evidence-the State certified Officer Painter and the PBT instrument, the State conducted the PBT through Officer Painter, and the State relied on the test result to justify a warrantless arrest of Reavely. Thus, in my view, this evidence should not be withheld from the jury simply because Reavely did not prove its reliability in the same way the State must do so to carry its burden of proof beyond a reasonable doubt.
¶41 As this Court indicated in State v. Damon, 2005 MT 218, ¶ 27, 328 Mont. 276, ¶ 27, 119 P.3d 1194, ¶ 27, one of the factors establishing the reliability of a particular PBT result is the State’s conformance with the administrative rule requiring proper calibration of the PBT instrument on a regular basis-i.e., monthly calibration to within a 10% margin of error. Admin. R. M. 23.4.213(2)(b). This Court has held that “a defendant charged with driving under the influence of alcohol is entitled to the procedural safeguards contained within the administrative rules.” State v. Woods, 285 Mont. 124, 127, 947 P.2d 62, 63 (1997) (internal citations omitted).[5] In my view, if we are to *163 faithfully adhere to the principle that a defendant is “entitled to the procedural safeguards contained within the administrative rules,” we must not saddle the defendant with the burden of affirmatively establishing that the State conformed to those rules, particularly where the State has already relied on the PBT result to establish probable cause for a warrantless arrest.
¶42 Finally, in addition to disagreeing with the Court’s decision today, I also take issue with the Court’s reliance on Damon because our decision in that case is internally inconsistent. In Damon, this Court addressed the State’s use of PBT evidence to prove guilt, and in doing so, repeatedly emphasized the rule that “it is better to admit relevant scientific evidence in the same manner as other expert testimony and allow its weight to be attacked by cross-examination and refutation.” Damon, ¶¶ 17, 19, 28 (citations omitted). Based on this rule, the Court held that questions regarding whether a particular PBT result is reliable go to the weight of the evidence and not to its admissibility. Damon, ¶ 24. However, the Court then proceeded to hold that a PBT result must be shown to be reliable before it is admissible in evidence. Damon, ¶ 25. Of course, if this is so, then questions regarding the PBT’s reliability do in fact go directly to the issue of admissibility, contrary to the Court’s holding in ¶ 24 of Damon.
¶43 I dissented in Damon, and will not reiterate my disagreement with the outcome of that case here. However, I urge the Court to address this internal inconsistency in Damon, as currently, the decision can be legitimately cited for diametrically opposed rules regarding PBT evidence.
¶44 Returning to the present case, I conclude in summary that Reavely was entitled to present the PBT evidence as an estimate of his BAC-which is in fact how it is recognized under our law-in support of his reasonable-doubt argument, without first having to present the same proof of reliability that we require when the State seeks to use PBT evidence to carry its burden of proof beyond a reasonable doubt. Here, Reavely’s proposed use of the PBT evidence for a limited purpose-i.e., not to affirmatively “prove” anything, but to merely support his reasonable-doubt argument-did not implicate any of the concerns that prompted us to initially require the State to prove PBT reliability.
¶45 Moreover, given that the State is required by law to take extensive measures to ensure PBT reliability, and given that the State relied on the PBT result in this case to arrest Reavely without a warrant, Reavely should not now be required to prove that the State *164 complied with its legal obligations to ensure PBT reliability. Indeed, we have repeatedly held that a defendant charged with DUI is entitled to the benefit of the Administrative Rules that require the State to ensure PBT reliability.
¶46 Finally, I note again what is perhaps the clearest guidance from our precedents indicating the proper outcome of this decision: the State could not have been prejudiced by Reavely’s use of the PBT result because that evidence was merely redundant of the Intoxilyzer 5000 test result. Weldele, ¶ 63.
¶47 For these reasons, I conclude that the District Court abused its discretion in precluding Reavely from utilizing the PBT result in support of his reasonable-doubt argument. Further, I conclude that the court’s decision constitutes reversible error because it deprived Reavely of “a meaningful opportunity to present a complete defense.” See California v. Trombetta, 467 U.S. 479, 485, 104 S. Ct. 2528, 2532 (1984). Reavely was wrongly denied the opportunity to solicit, by way of cross-examination, Officer Painter’s testimony as to the PBT result. Denying a defendant the opportunity to conduct effective cross-examination amounts to “constitutional error of the first magnitude and no amount of showing of want of prejudice w[ill] cure it.” See Davis v. Alaska, 415 U.S. 308, 318, 94 S. Ct. 1105, 1111 (1974) (citation and internal quotation marks omitted).
¶48 Accordingly, I dissent.
JUSTICE NELSON joins in the dissent of JUSTICE COTTER.

 The District Court expressly prohibited any reference whatsoever to the PBT result, stating: “the PBT test results [are] inadmissible and they shouldn’t be referred to as far as numbers or otherwise.” Because this Court affirms the District Court’s ruling, I disagree with the assertion in Justice Leaphart’s concurrence that our decision “would not have prevented Reavely, for example, from asking Officer Painter to testify to the PAST result that he observed on the PAST screen.”

 There are numerous other examples of evidence that is inadmissible for certain purposes but admissible for other purposes, including: evidence of subsequent remedial measures, M. R. Evid. 407; evidence of an offer to settle a claim, M. R. Evid. 408; and evidence of prior accidents in a negligence suit, Richardson v. State, 2006 MT 43, ¶ 26, 331 Mont. 231, ¶ 26, 130 P.3d 634, ¶ 26.

 As noted in Taylor v. Kentucky, 436 U.S. 478, 483-84, n.12, 98 S. Ct. 1930, 1934, n.12 (1978), even when a defendant presents no evidence whatsoever, but simply “remainfs] inactive,” he or she is still fully entitled to the presumption of innocence. Moreover, to the extent Reavely did choose to present evidence in this case, he was not required to meet any burden of proof to justify the presumption of innocence; rather, that presumption remained with him at every stage of the trial. Gilbert, 125 Mont. at 109, 232 P.2d at 341. Further, Reavely did not mount an affirmative defense which would have required him to affirmatively “prove” any particular facts.

 See § 61-8-409(7), MCA (requiring that the PBT instrument and the officer administering the test must he properly certified pursuant to Montana’s Administrative Rules); see also Admin. R. M. 23.4.201-225 (inter alia, requiring that all PBT instruments must be tested on a monthly basis and must render results at plus or minus 10% of target value or be removed from service; providing requirements for keeping detailed records of the monthly tests; and providing training and testing *162 requirements for the certification of officers who administer PBTs).

 We have repeatedly held that defendants are entitled to the safeguards of the Administrative Rules. State v. McDonald, 215 Mont. 340, 346, 697 P.2d 1328, 1331 (1985); State v. O’Brian, 236 Mont. 227, 229, 770 P.2d 507, 508 (1989); State v. West, 252 Mont. 83, 89, 826 P.2d 940, 944 (1992).